872 F.2d 676
 Barbara and Christopher SCHULTZ, Individually and on Behalf
of Their Minor Daughter, Rachel, Plaintiffs-Appellants,
v.
METROPOLITAN LIFE INSURANCE COMPANY, et al., Defendants,
Hart Schaffner & Marx, (Hartmarx Corporation), Defendant-Appellee.
and
Barbara SCHULTZ/Christopher Schultz, Individually and on
Behalf of Their Minor Daughter, Rachel Schultz,
Plaintiffs-Appellants,
v.
HART SCHAFFNER & MARX SUBSIDIARY and AFFILIATED COMPANIES
GROUP LIFE INSURANCE and MEDICAL PLAN (The Plan),
Hart Schaffner & Marx, Defendants-Appellees.
 No. 88-3658.
 United States Court of Appeals,
Fifth Circuit.
 May 12, 1989.
Rehearing Denied July 26, 1989.
 
 Edward F. Downing, III, Gauthier, Murphy, Sherman, Chehardy & Ellis, Metairie, La., for plaintiffs-appellants.
 Gary D. Ashman, Chicago, Ill., Jerry C. Paradis, Metairie, La., and Carey M. Stein, and Margaret F. Woulfe, Hartmarx Corp., Chicago, Ill., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before CLARK, Chief Judge, and RUBIN and DAVIS, Circuit Judges.
 CLARK, Chief Judge:
 
 
 1
 Barbara and Christopher Schultz (collectively "Schultz") appeal from the summary judgment entered against them by the district court. We affirm.
 
 I.
 
 2
 On July 9, 1982 a Pan American Airlines jet crashed into the Schultz home. One of the Schultz children was killed, and Mrs. Schultz and another Schultz child were injured. At the time of the accident, Mr. Schultz was employed by Porter-Stevens, Inc., a subsidiary of Hart, Schaffner & Marx ("HSM"). Schultz participated in a family health insurance plan entitled the Hart Schaffner & Marx Subsidiary and Affiliated Companies Group Life and Medical Plan (the "Plan").
 
 
 3
 A few days after the accident, the representative of Pan Am's insurance carriers, United States Aviation Underwriters, Inc. (USAU), contacted Mr. Schultz and advised him that arrangements had been made to pay for all reasonable and necessary medical expenses required by the Schultz family. USAU further instructed Schultz to forward all medical invoices to USAU for direct payment. HSM was informed of this arrangement, and accordingly forwarded all medical invoices it received to USAU for payment. In November 1982, Mr. Schultz terminated his employment without electing to continue Plan coverage.
 
 
 4
 USAU paid a total of $321,838.88 for medical expenses incurred by the Schultz family. Pan Am and its insurers ultimately settled with the Schultz family for $7.2 million in addition to the medical expenses.
 
 
 5
 Two years after the accident, Schultz requested Plan coverage for $173,564.52 in medical expenses which had already been paid by Pan Am's insurers. The request was denied on the grounds that the Plan did not provide for double coverage. Schultz exhausted available administrative remedies by appealing to the Plan's Claims Appeal Committee, which also denied coverage. Schultz brought this action against HSM and the Plan alleging that the claim for medical expenses had been wrongfully denied. The district court entered summary judgment for the defendants.
 
 II.
 
 6
 We first address the appropriate standard of judicial review for benefit determinations by plan administrators under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1001, et seq. The Supreme Court has recently held that "a denial of benefits challenged under Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). This action to recover benefits denied by the Plan administrator comes under 29 U.S.C. Sec. 1132(a)(1)(B). Neither party has pointed to any provision in the Plan which gives the administrator discretionary authority to determine benefit eligibility or to construe the plan terms. Accordingly, the district court's review of the administrator's denial of the Schultz claim will be tested here based on a de novo review standard.
 
 
 7
 The district court found that the Plan administrator acted properly in finding that the medical expenses submitted by Schultz were not covered by the Plan. The court cited the "coordination of benefits" provision contained in the Plan:
 
 
 8
 If a person is eligible for medical benefits under any other plan of coverage:
 
 
 9
 (a) for individuals in a group, whether on an insured or uninsured basis (such as group insurance, Blue Cross, Blue Shield, mutual benefit association, student insurance and fraternal societies); or
 
 
 10
 (b) provided under any governmental program; or
 
 
 11
 (c) required or provided by law,
 
 
 12
 the benefits of this Plan may be reduced so that during the calendar year up to, but not more than, 100% of the person's medical expenses (at least a portion of which is covered under one or more of such Plans) will be paid by all such Plans.
 
 
 13
 Schultz argues that this clause provides for coordination of benefits only between medical insurance plans, not between medical insurers and liability insurers. The question is one of contract interpretation. The coordination of benefits clause is not restricted by its language to coordinating benefits among medical insurers. The clause is open to the interpretation that Pan Am's liability insurance is a plan of coverage "required or provided by law" which should be coordinated with the benefits under the Plan. See 14 C.F.R. Sec. 205.5(a).
 
 
 14
 When a contract is reasonably subject to different interpretations, the conduct of the parties before the advent of a controversy may be relied upon to discover the parties' understanding of the contract. See Hoyt R. Matise Co. v. Zurn, 754 F.2d 560, 564 n. 3 (5th Cir.1985); Julius Goldman's Egg City v. United States, 697 F.2d 1051, 1058 (Fed.Cir.), cert. denied, 464 U.S. 814, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983). In this case the conduct of the parties construed the coordination of benefits clause to mean that medical expenses paid by Pan Am's insurers would be coordinated with the benefits under the Plan. Pan Am's insurance representative, USAU, contacted Mr. Schultz within a few days of the accident and assured him that USAU would pay all medical expenses incurred by the Schultz family. USAU instructed Schultz to have all medical invoices forwarded to USAU for direct payment. This information was communicated to HSM, which acted in accordance with USAU's instructions and forwarded all medical invoices to USAU. USAU paid the medical expenses directly. Schultz never filed a claim form with his employer in accordance with the Plan. Not until October 1983, well over a year after the accident, did Schultz submit a written request to HSM that the Plan pay some of the medical expenses incurred by the Schultz family. Even then the request was directed at medical expenses that USAU had allegedly not paid. Not until July 1984 did Schultz make a written request that the Plan pay for medical expenses which by then USAU had already paid. Under the unique facts present in this case, we hold that the coordination of benefits clause was properly construed to deny double recovery to Schultz. We expressly pretermit any intention of ruling on the effect of similar language in a tort claim situation in which the language, the type of parties or their conduct may be factually different from that here involved.
 
 
 15
 Schultz argues that his claim was singled out for improper treatment. Schultz focuses on an interrogatory response in which HSM said it knew of no other claims denied because a tortfeasor would be paying the amounts claimed. But as the district court noted, this statement does not establish that such claims have ever been filed before. Schultz speculates that such claims probably have been filed before. That speculation, standing alone, raises no issue of material fact that would preclude summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 16
 Schultz relies on an affidavit from Dorothy Gullo, a former insurance claims handler for Mr. Schultz's employer, who stated that she forwarded Schultz's bills to HSM's legal department rather than to the Plan administrator for payment. However, such treatment by itself does not make the denial of coverage improper or unprecedented. The affidavit does not establish that the Plan granted claims in similar situations. Indeed, the district court found that the affidavit supported HSM's claim that the Plan has never been interpreted to permit a double recovery of medical expenses. The district court correctly found that the affidavit does not raise an issue of material fact which would preclude summary judgment.
 
 
 17
 The final argument Schultz makes is that the Plan was estopped to deny coverage beyond the date Mr. Schultz quit because the benefits supervisor failed to tell Schultz that he could continue his coverage after his employment ended. However, several months before Mr. Schultz quit, he received and reviewed a copy of the Plan summary, which included a description of how to continue Plan coverage after his employment ended by converting it to individual insurance. He never converted. Schultz, charged with knowledge of the plan, cannot now find a fiduciary breach in the supervisor's failure to remind him of the conversion option. See Cummings by Techmeier v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 387 (7th Cir.), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986).
 
 III.
 
 18
 The district court properly granted summary judgment for the defendants. Our ruling makes it unnecessary to reach the remainder of defendants' arguments on appeal. The judgment is AFFIRMED.