E. GRADY JOLLY, Circuit Judge:
 

 This case is before us for a second time. It requires us to determine the appropriate standard for review of factual determinations made by plan administrators under ERISA. The plaintiff brought suit for the denial of accidental death benefits under her husband’s ERISA plan. In the first round, the district court applied the then proper standard of arbitrary and capricious review to the decisions of the ERISA plan administrator. Accordingly, it allowed the administrator to consider “hearsay” evidence, and concluded that the administrator’s denial of the plaintiffs’ claim was not arbitrary or capricious. On appeal, this court affirmed. 866 F.2d 141 (1989). Shortly thereafter, the Supreme Court decided
 
 Firestone Tire & Rubber Co. v. Bruch,
 
 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), mandating
 
 de novo
 
 review for certain decisions by ERISA plan administrators. We vacated our previous opinion and remanded the case for further proceedings in the light of
 
 Bruch.
 
 877 F.2d 345. On rehearing, the district court applied
 
 de novo
 
 review and excluded the hearsay evidence. It then proceeded to reject the plan administrator’s decision, and entered judgment for the plaintiff. The defendant appeals. As we explain in further detail below, we hold that
 
 Bruch
 
 does not require
 
 de novo
 
 review for factual determinations such as those in this case. Rather, we conclude that an abuse of discretion standard of review is appropriate in this case. Applying that standard, we reverse the decision of the district court.
 

 I
 

 The relevant facts are straightforward. The defendant, Connecticut General Life Insurance Company/Life Insurance Company of North America (hereinafter “Connecticut General”) issued to Martin Marietta Corporation two insurance policies to fund claims under its employee welfare benefit plan. The plaintiff-appellee’s husband, James Pierre, was employed by Martin Marietta and participated in its employee insurance benefit plan. He was shot to death during the early morning of October 26, 1986.
 

 The admitted killer was Antoinette Collins, the deceased’s lover. After investigation by the New Orleans police department, it was determined that Pierre was last with Ms. Collins the morning he was killed and that she was the principal suspect. She soon turned herself in and made a statement claiming that she had in fact shot Pierre to death, that there were no witnesses, and that her actions had been in self-defense. The New Orleans police credited her story and declined to prosecute. On November 10, 1986, Pierre’s wife filed a claim for $290,000 in benefits under one of the group accident insurance policies and a
 
 *1550
 
 claim for $17,000 under the accidental injury benefit provision of the other policy. Along with these accidental death claims, she submitted a copy of the death certificate in which the death was classified as a “homicide.”
 

 Connecticut General investigated the claims. Detective Fanguy of the New Orleans police department related to Connecticut General that Ms. Collins had confessed to the police that she had shot the deceased following an altercation in his car during which he had pistol whipped her with one of his guns; that the interior of the deceased’s ear showed signs of a struggle; and that Ms. Collins appeared to have been beaten when she turned herself in to the police. Connecticut General also hired a private investigator to investigate the claims, and he uncovered additional facts. The private investigator viewed the police records and photographs of Ms. Collins at the police department, and confirmed that the police department photographs revealed visible bruises and lacerations on Ms. Collins and that one eye appeared badly injured.
 

 The investigator also conducted a personal interview with Ms. Collins who acknowledged that she had been dating the deceased and stated that he had beaten her previously. She also stated that the deceased knew that she carried a gun. She further stated that they had argued at a bar on the night of his death and that he had beaten her with one of his two guns during a second dispute on the way home, stopping his car as they argued. It was during the second altercation that Ms. Collins claimed she took a pistol from her purse and shot the deceased twice while he was struggling with her.
 

 On the basis of the information supplied by Detective Fanguy, the death certificate, and the private investigator’s report, Mr. Weidele, the ERISA plan administrator, concluded that the deceased’s death was not “accidental” within the terms of the policies; that is, because the deceased was the aggressor and his actions precipitated the shooting that resulted in his death, his death did not result “directly and from no other causes, from bodily injuries caused by accident.” After reaching this conclusion, Connecticut General asked the plaintiff to submit any new or contrary information she might have for their reconsideration, and, receiving none, Connecticut General denied the claim.
 

 II
 

 The plaintiffs filed this action in state court to recover accidental death benefits under the two group insurance contracts. Connecticut General removed the action to United States District Court on the basis of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(e). The matter was submitted to the judge on stipulated facts at the initial hearing of this case. The parties agreed that under Louisiana law, benefits were not payable if Ms. Collins acted in self-defense. The plaintiffs, however, contested the accuracy and admissibility of Ms. Collins’s hearsay statements. The district court applied the arbitrary and capricious standard of review to the plan administrator’s denial of benefits, determined that the hearsay evidence relied upon by the plan administrator was properly considered in assessing the claim for benefits, and concluded that the decision of the administrator was “neither arbitrary or capricious.” Specifically, the court found that the “non-hearsay evidence, by itself, would not have been sufficient to support the [plan administrator’s] decision to deny plaintiffs’ claim,” but held that the rules of evidence are not binding in ERISA claims and allowed the statement. The district court entered judgment for the defendant, and we affirmed, holding that the denial of benefits was based on substantial evidence, and therefore, was not arbitrary and capricious. On petition for rehearing, we vacated our opinion and remanded the case to the district court for determination whether the Supreme Court's recent decision in
 
 Firestone Tire & Rubber Co. v. Bruch
 
 applied.
 

 On remand, the district judge used a two-step analysis in concluding that the administrator’s denial of the plaintiffs’ claims was unwarranted. First, the district
 
 *1551
 
 court held that because neither party had identified any provision in the ERISA plan expressly giving the plan administrator discretionary authority,
 
 de novo
 
 review was appropriate. Second, in applying
 
 de novo
 
 review, the court disallowed the hearsay evidence as lacking in trustworthiness, and concluded that it was insufficient to support the plan administrator’s decision to deny the plaintiffs’ claim. As a result, the district court reversed its earlier ruling and entered judgment for the plaintiffs. The defendant appeals.
 

 Ill
 

 A
 

 The insurance policies in this action are governed by ERISA, 29 U.S.C. § 1001
 
 et seq.
 
 Connecticut General, the plan administrator
 
 [1]
 
 of Martin Marietta’s employee welfare plan, is a fiduciary for purposes of ERISA because it exercises authority or control in the distribution of assets of the benefits plan. 29 U.S.C. § 1002(21)(A). ERISA provides that “a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan.” 29 U.S.C. § 1104(a)(1)(D).
 

 ERISA does not set out the appropriate standard of review for evaluating benefit determinations of plan administrators, fiduciaries or trustees in actions challenging those determinations under § 1132(a)(1)(B).
 
 [2]
 
 Federal courts, however, increasingly adopted the arbitrary and capricious standard developed under § 186(c) of the Labor Management Relations Act (“LMRA”), 61 Stat. 157, 29 U.S.C. § 186(c). The result, with few exceptions, was that the arbitrary and capricious standard became the standard of review in every federal jurisdiction that considered the denial of ERISA plan benefits, irrespective of the nature of the benefits claimed.
 
 [3]
 
 The justification for adopting this standard was that it prevented abdication of judicial control over fiduciaries while avoiding excessive judicial intervention in the operation of benefit plans.
 
 See Bayles v. Central States, Southeast & Southwest Areas Pension Fund,
 
 602 F.2d 97, 100 (5th Cir.1979) and
 
 Wolfe v. J.C. Penney Co.,
 
 710 F.2d 388 (7th Cir.1983). This justification notwithstanding, the across-the-board use of this standard was not without some criticism.
 
 See, e.g., Van Boxel v. Journal Co. Employees’ Pension Trust,
 
 836 F.2d 1048, 1049-53 (7th Cir.1987).
 

 B
 

 (1)
 

 In
 
 Firestone Tire & Rubber Co. v. Bruch, supra,
 
 the Supreme Court for the first time addressed the issue of the appropriate standard of review for claim denials under ERISA. Writing for the Court, Justice O’Connor criticized the resulting
 
 wholesale
 
 importation of the arbitrary and capricious standard into ERISA because in certain cases it had left employees worse off than they were before ERISA.
 
 [4]
 
 The
 
 *1552
 
 Court unanimously rejected the analogy to the LMRA that had served as the basis for applying the arbitrary and capricious standard to plan term interpretations. 109 S.Ct. at 953-55. Instead, trust principles should guide the choice of standards of review for plan administrator actions.
 
 Id.
 
 at 954 (citing Restatement (Second) of Trusts § 187 (1959)). It then noted that a trustee’s decisions are accorded deferential treatment only where the instrument itself grants the trustee discretion. Therefore, the Court reasoned, deference to an ERISA benefit plan administrator’s decision is appropriate only where the benefit plan grants discretion to the administrator to interpret plan terms. 109 S.Ct. at 953-56. The Court concluded that
 
 de novo
 
 review of ERISA plans is appropriate only when the plan does not give the plan administrator discretionary authority to interpret plan terms.
 
 Id.
 
 at 956.
 

 (2)
 

 The outcome in our case today turns upon the proper application of the Supreme Court’s holding in
 
 Bruch;
 
 specifically, we must determine whether
 
 Bruch
 
 encompasses a holding that
 
 de novo
 
 review is required of
 
 factual determinations
 
 by ERISA fiduciaries. In this analysis, a point of tension is created by Bruch’s express limitation, on the one hand, that, “The discussion that follows is
 
 limited
 
 to the appropriate standard of review in § 1132(a)(B)(l) actions challenging denials of benefits based on plan
 
 term
 
 interpretations,” 109 S.Ct. at 953 (emphasis added); and, on the other hand, the absence of the express limitation in the latter part of the opinion:
 

 [T]he validity of a claim to benefits under an ERISA plan is likely to turn on the
 
 interpretation of terms
 
 in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under Section 1132(a)(1)(b) is to be reviewed under a
 
 de novo
 
 standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. (Emphasis added)
 

 109 S.Ct. at 956.
 

 The district court in the instant case correctly determined that the plan instrument contained no express provision giving the plan administrator discretionary authority to construe plan terms when determining the eligibility of the claimant. Finding no such provision, the district court, without addressing the distinction between
 
 factual
 
 determinations and plan
 
 term
 
 interpretations, held that
 
 Bruch
 
 required
 
 de novo
 
 review.
 

 Connecticut General argues that the district court improperly interpreted the Supreme Court’s holding in
 
 Bruch.
 
 Although conceding that
 
 Bruch
 
 applied
 
 de novo
 
 review for “plan term interpretations,” Connecticut General argues that the instant case does not involve a denial of benefits based on an interpretation of a plan
 
 term.
 
 On the contrary, the instant case involves a plan administrator’s factual determinations that, Connecticut General argues, are not controlled by the
 
 Bruch
 
 holding. Connecticut General concludes that
 
 de novo
 
 review is an ill-advised standard to apply to an ERISA plan administrator’s purely factual determinations, and that a more deferential standard of review is better suited for such determinations.
 

 (3)
 

 This is a case of first impression in this circuit.
 
 [5]
 
 In fact, we have found only one
 
 *1553
 
 other circuit court that has expressly decided this issue,
 
 [6]
 
 and the district courts that have considered it are split.
 
 Compare, e.g., Guisti v. General Electric Co,
 
 733 F.Supp. 141, 147-48 (N.D.N.Y.1990) (applying
 
 de
 
 novo), and with
 
 Moshin v. John Hancock Mutual Life Ins. Co.,
 
 No. 88-60415, slip op. at 5-6 (E.D.Mich. Nov. 27, 1989) (applying arbitrary and capricious);
 
 Petrilli v. Drechsel,
 
 No. 88-6051, Slip op. at 6-8, 1989 WL 106639 (N.D.Ill. Sept. 11, 1989) (same),
 
 rev’d on other grounds,
 
 910 F.2d 1441 (7th Cir.1990); and
 
 Questech, Inc. v. Hartford Acci. & Indem. Co.,
 
 713 F.Supp. 956, 962-63 (E.D.Va.1989) (same).
 

 We begin our analysis by reviewing the role of a fiduciary or plan administrator under ERISA. ERISA defines a fiduciary as one who “exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets.” 29 U.S.C. § 1002(21)(A)(i). A fiduciary has “authority to control and manage the operation and administration of the plan,” 29 U.S.C. § 1102(a)(1), and must provide a “full and fair review” of claim denials. 29 U.S.C. § 1133(2). In
 
 Bruch,
 
 Firestone pointed to these ERISA provisions and argued that “an ERISA plan administrator, fiduciary, or trustee is empowered to exercise
 
 all
 
 his authority in a discretionary manner subject only to review for arbitrariness and capriciousness.”
 
 Id.
 
 at 955 (emphasis in original). The Court, however, rejected Firestone’s contention that these sections made plan
 
 term
 
 interpretations inherently discretionary, noting that these ERISA provisions do not “characterize a fiduciary as one who exercises
 
 entirely
 
 discretionary authority or control.”
 
 Id.
 
 (emphasis in original). Rather, the Court, referring to common law trust principles, noted that “only to the extent that he exercises
 
 any
 
 authority and control” is a plan administrator a fiduciary.
 
 Id.
 
 (emphasis in original).
 

 Fully acknowledging the Supreme Court’s conclusion with respect to plan term interpretations, we nonetheless must recognize that before benefits are paid or denied, a plan administrator has to make determinations that may be divided into two general categories. First, he must determine the facts underlying the claim for benefits.
 
 See Makar v. Health Care Corp.,
 
 872 F.2d 80, 83 (4th Cir.1989) (plan fiduciaries are responsible for assembling a factual record which will assist a court in reviewing the fiduciaries’ actions). Second, he must then determine whether those facts constitute a claim to be honored under the
 
 terms
 
 of the plan.
 
 See generally Dennard v. Richards Group, Inc.,
 
 681 F.2d 306 (5th Cir.1982).
 
 Bruch
 
 addressed the proper standard of review that is to be given to the plan administrator’s second determination.
 
 Bruch
 
 did not speak to the first.
 

 We think that it is completely consistent with the principles of trust law to apply a different standard of review to each of these categories of decisions. The Supreme Court did not eschew “deferential review” part and parcel. Indeed, as the Court expressly acknowledged, “[tjrust principles make a deferential standard of
 
 *1554
 
 review appropriate when a trustee exercises discretionary powers.” 109 S.Ct. at 954. The Restatement (II) Trusts § 187 (1959), provides: “Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of this discretion.” The Restatement (II) Trust § 186(b), provides further that:
 

 [T]he trustee can properly exercise such powers and only such powers as ... (b) are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust.
 

 It is indisputable that an ERISA trustee, by its very nature, is granted some
 
 inherent
 
 discretion, i.e., “authority to control and manage the operation and administration of the plan.” 29 U.S.C. § 1102(a)(1); furthermore, he is required to provide “a full and fair review” of each claim denial. The question is whether this grant can reasonably be construed to be authority to make factual determinations on the claims before it. We know, of course, that the Supreme Court in
 
 Bruch
 
 held that this
 
 inherent
 
 discretion did not extend to a decision that interpreted plan terms. Nevertheless, it seems clear to us that decisions made in the performance of functions that are “necessary or appropriate” to the daily and routine administration of plans are inherently discretionary. Restatement (Second) Trust § 186, read in conjunction with the ERISA principles contained in 29 U.S.C. § 1102(a)(1), leads us to conclude that this “necessary or appropriate” discretion includes passing on issues of fact that determine individual eligibility for benefits.
 
 [7]
 

 See Makar,
 
 872 F.2d at 83. Consequently, under the principles of trust law, we owe the administrator’s factual determination a deferential review.
 
 See generally Du Pont v. Southern Nat. Bank,
 
 771 F.2d 874 (5th Cir.1985).
 
 [8]
 

 There are additional considerations that militate against applying
 
 Bruch’s, de novo
 
 review to factual determinations. Unlike plan term interpretations, factual determinations do not involve contract interpretations. Factual determinations are generally reviewed under some discretionary standard such as clearly erroneous discretion, arbitrary and capricious, or abuse of discretion.
 
 Anderson v. Bessemer City,
 
 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985);
 
 Pullman-Standard, Div. of Pullman, Inc. v. Swint,
 
 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). Thus, the federal courts' application of a deferential standard of review to factual determinations after the passage of ERISA does not result in the loss of any substantial rights comparable to the loss that the Supreme Court noted in applying the arbitrary and capricious standard to term interpretations, which “eonstrict[ed] the common law rights of employees.”
 
 Bruch, supra.
 
 Therefore, this important justification for the
 
 Bruch
 
 Court’s rejection of a deferential standard of review for plan term interpretations is
 
 *1555
 
 absent in the consideration of factual determinations.
 

 Moreover,
 
 de novo
 
 review of factual determinations is a difficult and uncertain exercise on a cold record. It seems to us that no persuasive argument can be made that
 
 de novo
 
 review of an issue of fact is more reliable than a standard of review that respects the advantage of the fact finder while also protecting against abuse of the fact finder’s power. In virtually all decisional review, some deference is given to the fact finder, whether it is a district court giving deference to an administrative body, or an appellate court giving deference to the district court.
 
 See, e.g., Anderson v. Bessemer City, supra.
 
 We see no reason here why the plan administrator, i.e., the trier of fact, should be placed in a different status.
 
 See Daniel v. Eaton Corp.,
 
 839 F.2d 263, 267 (6th Cir.1988) (pr
 
 e-Bruch)
 
 (“A federal court is to focus on the evidence before the trustees at the time of their final decision and is not to hold a
 
 de novo
 
 factual hearing on the question of the applicant’s eligibility.”) (quoting
 
 Wardle v. Central States, Southeast and Southwest Areas Pension Fund,
 
 627 F.2d 820, 824 (7th Cir.1980)).
 

 There is a compelling practical reason why plan administrators are given wide discretionary powers in making factual determinations. We only need consider, for example, the number of claims that must be approved or denied under these plans. The plan administrator must determine if someone qualified for a benefit by length of service, the remaining unused benefits, the nature of the injury, where the injury occurred, whether a particular injury was accidental or whether it was during the course and scope of employment, and on and on. The courts simply cannot supplant plan administrators, through
 
 de novo
 
 review, as resolvers of mundane and routine fact disputes.
 
 See Anderson v. Bessemer City,
 
 470 U.S. at 574-75, 105 S.Ct. at 1512 (“Duplication of the trial judge’s efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources”). Considerations of expediency therefore support deference to factual determinations made in the administration of the plan. Otherwise, federal trials are encouraged in the vast numbers of claims that are filed in the thousands of ERISA plans throughout this country.
 

 Thus, we think that plan administrators justifiably fear that
 
 de novo
 
 review of their discretionary decisions will increase litigation.
 
 See Flint, ERISA: The Arbitrary and Capricious Rule Under Siege,
 
 39 Cath.U.L.Rev. 133 (1989). The expenses of such litigation will often reduce the size of the fund from which benefits are paid. We therefore conclude that a deferential standard for factual determinations is buttressed, if not compelled, by practical considerations.
 

 (4)
 

 Nevertheless, the plaintiff cites numerous
 
 post-Bruch
 
 cases which purportedly apply
 
 de novo
 
 review to factual determinations without specifically addressing the merits of
 
 de novo
 
 versus a more deferential standard of review.
 
 [9]
 
 After careful study of those cases, we decline to accept such an application of
 
 Bruch.
 
 Plaintiffs further argue that we should follow the lead of the Sixth Circuit, citing two recent opinions from the Sixth Circuit that have purportedly applied
 
 de novo
 
 review to factual determinations. In
 
 McMahan v. New England Mut. Life Ins. Co.,
 
 888 F.2d 426, 431 (6th Cir.1989), the court remanded to the district court to determine
 
 de novo
 
 whether the term “employee” in the ERISA plan applied to the deceased. Not only is this question arguably a plan term interpretation, but both parties agreed that
 
 de novo
 
 review was appropriate; therefore,
 
 *1556
 
 the issue before us was not before that court. In
 
 Brown v. Ampco-Pittsburgh Corp.,
 
 876 F.2d 546, 551 (6th Cir.1989), the court did in fact remand the case for determination, under the
 
 de novo
 
 standard, of an apparent factual issue. The
 
 Brown
 
 court, however, as the
 
 McMahan
 
 court, failed to address the distinction between factual determinations and plan term interpretations. We conclude, therefore, that the Sixth Circuit thus far has only reflexively applied
 
 Bruch
 
 to all § 1132(a)(1)(B) claims without addressing the distinction between term and fact issues. Because the Sixth Circuit has not directly addressed the issue before us today, we view these cases as unpersuasive, if not inapposite, authority-
 

 The Seventh Circuit, however, has come closer to addressing this issue, albeit in dicta. In
 
 Petrilli v. Drechsel,
 
 No. 88-6051, slip op. at 6-8, 1989 WL 106639 (N.D.Ill. Sept. 11, 1989),
 
 rev’d on other grounds,
 
 910 F.2d 1441 (7th Cir.1990), the district court adopted the narrower interpretation of
 
 Bruch,
 
 holding that
 
 de novo
 
 review is not required in cases of factual determinations. On appeal, the Seventh Circuit reversed on other grounds. Nevertheless, the court addressed in dicta the district court’s interpretation of
 
 Bruch.
 
 Although noting that the district court’s interpretation was “plausible,” the Seventh Circuit advanced three lines of analysis for rejecting a restrictive interpretation of
 
 Bruch.
 

 First, the Seventh Circuit rejected the district court’s reliance on the language at the beginning of the
 
 Bruch
 
 opinion that stated the scope of the issue the Court was deciding.
 
 See
 
 109 S.Ct. at 953. The Seventh Circuit observed that a later recital by the Supreme Court in
 
 Bruch
 
 did not contain the restrictive “plan term interpretation” language:
 

 [W]e hold that a denial of benefits challenged under § 1132(a)(1)(b) is to be reviewed under a
 
 de novo
 
 standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.
 

 Id.
 
 at 1446 (quoting
 
 Bruch,
 
 109 S.Ct. at 956). The Seventh Circuit reasoned from this language that, “[t]his later recitation of the holding strongly suggests that the Court intended
 
 de novo
 
 review to be mandatory where administrators were not granted discretion, regardless of whether the denials under review were based on plan interpretations.”
 
 Id.
 
 The Seventh Circuit, continuing to isolate and to rely upon this same sentence in
 
 Bruch,
 
 asserted further that
 

 [I]f this were not the intent, the Court could simply have omitted the words ‘to determine eligibility for benefits,’ from the above-quoted holding and confined the ‘unless’ clause to ‘unless the benefit plan gives the administrator or fiduciary discretionary authority to construe the terms of the plan.’
 
 [10]
 

 Id.
 
 Finally, the Seventh Circuit concluded that
 

 [T]he rationale supporting the Court’s adoption of
 
 de novo
 
 review provides no basis for discrimination between denials based on plan interpretations and denials for other reasons. By analogy to trust law, the rationale focuses on whether the written terms of the plan confer discretion on the administrator, and not oil the type of decision — factual or interpretive — that the administrator is rendering.
 

 910 F.2d at 1446.
 

 We find the Seventh Circuit’s rationale unconvincing. Initially, we note that the Seventh Circuit has taken the quote it re
 
 *1557
 
 lies on out of context. The entire paragraph states:
 

 As this case aptly demonstrates, the validity of a claim to benefits under an ERISA plan is likely to turn on
 
 the interpretations of terms in the plan at issue.
 
 Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a
 
 de novo
 
 standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. (Emphasis ours.)
 

 109 S.Ct. at 956. (Emphasis added.) When these two sequential sentences are read together, we think that the conclusion opposite to that reached by the Seventh Circuit is more tenable. Indeed, the specific language chosen by the Supreme Court in this prior sentence, that is, “as
 
 this
 
 case aptly demonstrates,” and “the interpretations of terms in the plan at issue,” when read with the earlier statement defining the scope of the issue before the court, allows but one conclusion: the
 
 Bruch
 
 holding decided only those like instances where the facts are
 
 not
 
 in dispute and recovery of benefits is dependent solely on the fiduciary’s interpretations of plan terms.
 
 [11]
 

 Furthermore, the Seventh and Fourth Circuits’ reasoning that the Supreme Court’s common law trust analogy requires
 
 de novo
 
 review of factual determinations is likewise not convincing.
 
 [12]
 
 Indeed, in addressing the application of trust law, the
 
 Bruch
 
 analysis suggests an additional reason for concluding that its discussion is limited to the construction of plan terms. The Supreme Court compared plan term interpretation to contract interpretation.
 
 See
 
 109 S.Ct. at 955. Generally, contract interpretation is reviewed under a
 
 de novo
 
 standard; a reviewing court does not defer to the lower court’s interpretation of the contract as long the interpretation looks to the four-corners of the contract. Once, however, the lower court goes beyond the boundaries of the written document to make determinations of fact, its findings are subject to a deferential standard.
 
 See generally Carpenters Amended and Restated Health Benefit Fund v. Holleman Construction Co.,
 
 751 F.2d 763, 766-68 (5th Cir.1985). Thus, we think that in analogizing to contract interpretation, the Supreme Court leaves the impression that it was not addressing the standard of review applicable to determinations made by the finder of fact.
 
 [13]
 

 Finally, the history of
 
 Bruch
 
 belies the Seventh Circuit’s interpretation. The Third Circuit in
 
 Bruch
 
 explicitly reserved comment on the proper standard of review for factual determinations and, therefore, that issue was not directly before that Court.
 
 See, e.g., Bruch v. Firestone Tire & Rubber Co.,
 
 828 F.2d 134, 144 n. 9 (3d Cir.1987) (“It should be noted that we also do not deal here with a determination of fact by a plan administrator. We leave for another
 
 *1558
 
 day the definition of the context, if any, in which courts should defer to such a determination.”) Thus, once
 
 Bruch
 
 reached the Supreme Court, the issue we confront today had been expressly extracted from the case.
 

 (5)
 

 Although not expressly addressing the appropriate standard of review for factual determinations, the Supreme Court did make two points very clear: (1) the analogy to the LMRA which gave rise to the arbitrary and capricious standard is unsound,
 
 see
 
 109 S.Ct. at 953-54; and (2) trust principles should guide the choice of standard of review under ERISA.
 
 Id.
 
 at 954-56. The question before us is whether to apply the arbitrary and capricious standard or one that is less deferential.
 

 In
 
 Van Boxel, supra,
 
 the Seventh Circuit criticized the arbitrary and capricious standard as being unclear and often requiring “bad faith” for reversing the trustees’ denial of benefits.
 
 See, e.g., Allen v. United Mine Workers of America 1979 Benefit Plan & Trust,
 
 726 F.2d 352 (7th Cir.1984);
 
 Dockray v. Phelps Dodge Corp.,
 
 801 F.2d 1149 (9th Cir.1986). Moreover, the arbitrary and capricious standard has often been interpreted virtually to eliminate all judicial review to the exercise of discretion by the trustee.
 
 Van Boxel,
 
 836 F.2d at 1050. The Supreme Court seems to have rejected the arbitrary and capricious standard of review completely when it said, “Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighted as a ‘factor[] in determining whether there is an abuse of discretion.’ ”
 
 [14]
 
 109 S.Ct. at 956 (citations omitted). Our thorough consideration leads us to the conclusion that the arbitrary and capricious standard for factual determinations is inapplicable because it may be interpreted and applied in a manner that is “too stringent.”
 
 Van Boxel
 
 at 1051.
 

 Rather, we look to trust law to determine the appropriate standard of review. In
 
 Du Pont v. Southern Nat. Bank, supra,
 
 we held that when the exercise of discretion is left to the trustee, federal courts review the actions of that trustee “only for an abuse of discretion.” 771 F.2d at 887. The
 
 Du Pont
 
 court reasoned that “[wjhenever discretion is conferred upon a trustee, the trustee must act within the bounds of ‘a reasonable judgment,’ and has a duty to deal impartially with the beneficiaries of the trust.” 771 F.2d at 887 n. 12 (quoting Restatement (II) of Trusts § 187 comment i (1959)).
 
 See also
 
 S. Scott,
 
 The Law of Trusts
 
 §§ 187.2, 232 (3d ed.1967) and Restatement (II) Trusts,
 
 supra,
 
 §§ 183, 232. Accordingly, we hold that for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard; that is, federal courts owe due deference to an administrator’s factual conclusions that reflect a reasonable and impartial judgment. We believe that an abuse of discretion standard best balances the need to respect the plan administrator’s factual determinations and the need to protect beneficiaries by providing some judicial review of those decisions.
 

 C
 

 The instant case will illustrate an application of the abuse of discretion standard. The heart of this case is the weight to be given to certain “hearsay” statements. Even in resolving this dispute, the plan administrator enjoys certain advantages that the courts do not have. He is much closer to the facts and the investigation. Acting through its agents, Connecticut General conducted the investigation and interviewed the declarant. On review, however, we can require that the hearsay meet certain indicia of reliability; if it does not, the abuse of discretion standard permits the court to reject the finding. If, for
 
 *1559
 
 example, the evidence had been only the murder suspect’s hearsay statement that, “I shot Pierre when he tried to strike me,” unsupported by corroborating evidence, then the abuse of discretion standard would permit us to conclude that, because of the witness’s self-serving interests, the decision to deny benefits based on this statement, without more, would be beyond the bounds of a reasonable judgment.
 

 Here, however, the plan administrator’s decision was based on corroborating evidence. The plan administrator considered the information supplied by Detective Fan-guy, the death certificate, and the private investigator’s report which was based on the police records and photographs of Ms. Collins. Moreover, the plan administrator requested that Pierre’s wife submit any evidence that suggested that Pierre’s death was not brought about by his own actions. Receiving no additional information from Pierre’s wife, the administrator made a reasonable and impartial decision to deny the claim. In the light of the entire circumstances surrounding the denial of the claims, we conclude that the plan administrator’s factual determination that Pierre’s death was not “accidental” within the meaning of the policies was not an abuse of discretion.
 

 IV
 

 For the reasons stated above, the decision of the district court is hereby REVERSED and the case is REMANDED for entry of judgment in favor of Connecticut General.
 

 REVERSED and REMANDED.
 

 [1]
 

 . ERISA defines a plan administrator as an entity with discretion in the administration of the plan. 29 U.S.C. § 1002(21)(A) (1982).
 

 [2]
 

 . § 1132(a)(1)(B) provides "A Civil action may be brought — (1) by a participant or beneficiary —(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.”
 

 [3]
 

 .
 
 See, e.g., Jestings v. New England Telephone & Telegraph Co.,
 
 757 F.2d 8, 10-11 (1st Cir.1985);
 
 Morse v. Stanley,
 
 732 F.2d 1139, 1145 (2d Cir.1984);
 
 Shiffler v. Equitable Life Assur. Soc.,
 
 838 F.2d 78 (3d Cir.1988);
 
 Berry v. Ciba-Geigy Corp.,
 
 761 F.2d 1003, 1006 (4th Cir.1985);
 
 Le Febre v. Westinghouse Electric Corp.,
 
 747 F.2d 197 (4th Cir.1984);
 
 Denton v. First Nat. Bank,
 
 765 F.2d 1295, 1303-04 (5th Cir.1985);
 
 Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees,
 
 740 F.2d 454 (6th Cir.1984),
 
 cert. denied,
 
 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985);
 
 Pokratz v. Jones Dairy Farm,
 
 771 F.2d 206 (7th Cir.1985).
 

 [4]
 

 .Specifically, the Court found that pre-ERISA courts reviewed the acts of plan administrators under the non-deferential
 
 de novo
 
 standard in those cases where the terms of the instrument did not provide for the permissive exercise of a plan administrator's power. 109 S.Ct. at 954. The Court acknowledged, however, that pre-
 
 Bruch
 
 courts gave deference to decisions of plan administrators when the terms of the instrument provided for discretionary authority.
 
 Id.
 
 
 *1552
 

 See, e.g., Smith v. New England Tele. & Tel. Co.,
 
 109 N.H. 172, 246 A.2d 697, 698 (1968).
 

 [5]
 

 . In
 
 Lowry v. Bankers Life and Cas. Retirement Plan,
 
 871 F.2d 522, 525 n. 5 (5th Cir.1989), we noted that we did not have occasion to consider whether
 
 Bruch
 
 allows a reviewing court to resolve questions of fact. Subsequently, in
 
 Schultz v. Metropolitan Life Ins. Co.,
 
 872 F.2d 676, 678 (5th Cir.1989), we stated:
 

 Neither party has pointed to any provision in the Plan which gives the administrator discretionary authority to determine benefit eligibility or to construe the plan terms. Accordingly, the district court’s review of the administrator’s denial of the
 
 Schultz
 
 claim will be tested here based on a
 
 de novo
 
 review standard.
 

 The
 
 Schultz
 
 court, however, expressly describe the issue before it as “one of contract interpreta
 
 *1553
 
 tion.”
 
 Id.
 
 at 679. Therefore, unlike the parties in this case, the parties in
 
 Schultz
 
 do not appear to have contested the factual determinations made by the plan administrator. Consequently, we do not consider
 
 Schultz
 
 a determination of the issue before us. Finally, our recent opinion in
 
 Cathey v. Dow Chemical Co. Med. Care Program,
 
 907 F.2d 554 (5th Cir.1990), should not be read as applying
 
 de novo
 
 review to a plan administrator’s decision to deny benefits. The question in
 
 Cathey
 
 was unrelated to the issue we decide today. The question there was not whether a claim under the plan was improperly denied; instead, the issue was whether the plan granted the administrator discretionary authority in making claim determinations. In deciding this question, the appellate court reviewed fact findings of the district court, which related only to the discretionary authority placed in the administrator by the plan. Therefore, the
 
 Cathey
 
 court did not address the proper standard of review for factual determinations made pursuant to a claim determination by a plan administrator.
 

 [6]
 

 .
 
 See Reinking v. Philadelphia American Life Ins. Co.,
 
 910 F.2d 1210 (4th Cir.1990), and discussion
 
 infra. See accord De Nobel v. Vitro Corp.,
 
 885 F.2d 1180 (4th Cir.1989). The Seventh Circuit in
 
 Petrilli v. Drechsel,
 
 910 F.2d 1441 (7th Cir.1990), did consider this issue in dicta.
 
 See discussion infra.
 

 [7]
 

 . The comments to § 186 support our position:
 

 In addition to the powers conferred in specific words by the terms of the trust, the trustee has such powers as are necessary or appropriate to carry out the purposes of the trust and are not forbidden either in specific words or otherwise by the terms of the trust. It is to be inferred that the settlor intended to confer upon the trustee such powers as under the circumstances known to or anticipated by the settlor are necessary or appropriate to carry out the purposes of the trust. * * * The trustee can properly exercise such powers as it appears from the language used in the trust instrument were intended to be conferred upon him, although not conferred in specific words. * * * The existence of powers in the trustee may be gathered not merely from the language in the trust instrument but from the nature of the purposes of the trust.
 

 [8]
 

 . Congressional intent supports our conclusion. Courts justify a discretionary standard by correctly asserting that ERISA requires plan administrators to process claims.
 
 Makar,
 
 872 F.2d at 83.
 
 See also Denton v. First Nat. Bank,
 
 765 F.2d 1295, 1304 (5th Cir.1985) (Congress intended to give administrators primary responsibility for processing claims);
 
 Daniel v. Eaton Corp.,
 
 839 F.2d 263 (6th Cir.1988) (plan administrator has broad discretion in deciding questions of coverage and eligibility for benefits);
 
 Harm v. Bay Area Pipe Trades Pension Plan Trust Fund,
 
 701 F.2d 1301, 1304 n. 3 (9th Cir.1983) (efficient plan administration). We acknowledge that the Supreme Court in
 
 Bruch
 
 rejected these justifications for plan term interpretations. We believe, however, that in the area of reviewing factual determinations, these justifications for a deferential standard of review remain valid and compelling.
 

 [9]
 

 .
 
 See, e.g., Miller v. Eichleay Engineers, Inc.,
 
 886 F.2d 30 (3d Cir.1989);
 
 Boyd v. Trustees of United Mine Workers Health & Retirement Funds,
 
 873 F.2d 57 (4th Cir.1989);
 
 Sandifer v. Central States Southeast and Southwest Areas Pension Fund,
 
 709 F.Supp. 713 (E.D.La.1989);
 
 Slover v. Boral Henderson Clay Products, Inc.,
 
 714 F.Supp. 825 (E.D.Tex.1989);
 
 Dzinglski v. Weirton Steel Corp.,
 
 875 F.2d 1075 (4th Cir.1989);
 
 Wallace v. Firestone Tire & Rubber Co.,
 
 882 F.2d 1327 (8th Cir.1989); and
 
 Guy v. Southeastern Iron Workers’ Welfare Fund,
 
 877 F.2d 37 (11th Cir.1989).
 

 [10]
 

 . The Fourth Circuit has also apparently relied on this language in its decision to apply
 
 de novo
 
 review to factual determinations.
 
 Reinking, supra.
 
 The
 
 Reinking
 
 court stated that a plan administrator’s
 

 factual determination is not controlling because the standard announced in
 
 Firestone
 
 applies both to the interpretation of policy terms and to factual determinations necessary for the administrator to 'determine eligibility for benefits.’ Courts will review both sets of questions
 
 de novo
 
 unless the policy delegates discretionary authority to one of the parties. In our view, nothing in the policy at issue in this case grants [the plan administrator] discretionary authority to find the facts necessary to make eligibility determinations.
 

 910 F.2d at 1214 (citations omitted).
 

 [11]
 

 . We again refer to the explicit back drop the Supreme Court chose for its opinion to make clear the limitations of its decision:
 

 The discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations.
 
 (Emphasis ours.)
 

 109 S.Ct. at 953. Unlike the Seventh and Fourth Circuits, we cannot lightly reject as meaningless this expressly stated limitation.
 

 [12]
 

 . The Fourth Circuit in
 
 Reinking
 
 reasoned that, "For us to grant the plan administrator such discretion would unnecessarily undermine the protection of the employee afforded by the ERISA statute." 910 F.2d at 1214.
 

 [13]
 

 . Indeed,
 
 Bruch
 
 does not address at all the immediate question presented by applying a
 
 de novo
 
 standard to factual determinations: whether the district courts are to conduct a
 
 de novo
 
 hearing or only a
 
 de novo
 
 review of the plan administrator’s factual determinations. In other words, is the district court to confine itself to the “evidence" before the plan administrator, or should it allow a full trial on the merits, including new evidence.
 
 See Local
 
 777
 
 Democratic Union Org. Comm. v. Nat’l Labor Relations Bd.,
 
 603 F.2d 862, 892 (D.C.Cir.1978) (distinguishing between "a
 
 de novo
 
 trial, where 'the case is tried a second time and the record is made up in the district court, and a court's review of findings of an administrative body, where the record is solely that of the administrative body’”) (citations omitted). We only note this fundamental ambiguity left unanswered in
 
 Bruch
 
 to reinforce our view that the Supreme Court’s analysis emphatically was not dealing with fact issues.
 

 [14]
 

 . Since
 
 Bruch,
 
 we have applied an abuse of discretion standard to plan administrators’ interpretations of plan terms where the plan expressly confers discretion on the plan administrator.
 
 See, e.g., Lowry v. Bankers Life and Cas. Retirement Plan,
 
 865 F.2d 692,
 
 reh’g denied
 
 871 F.2d 522, 524 (5th Cir.1989);
 
 Batchelor v. Intern. Broth. of Elec. Workers Local 861,
 
 877 F.2d 441, 442-43 (5th Cir.1989);
 
 Jordan v. Cameron Iron Works, Inc.,
 
 900 F.2d 53, 55-56 (5th Cir.1990).