**Rosemarie FINSTER, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. 3:95–CV–0811–P.**

United States District Court,
N.D. Texas,
Dallas Division.

April 29, 1996.

James P. Reeves, Krause Hollansworth & Reeves, Dallas, TX, for Rosemarie Finster.

Paul E. Ridley, Carolyn R. Konicek, Wolin, Fuller, Ridley & Miller, L.L.P., Dallas, TX, for Metropolitan Life Insurance Company.

## MEMORANDUM OPINION and ORDER

SOLIS, District Judge.

Now before the Court is Defendant Metropolitan Life Insurance Company's Motion for Summary Judgment and Brief in Support Thereof, filed January 12, 1996; Plaintiff's Response to Defendant's Motion for Summary Judgment, filed February 5, 1996; and Defendant's Reply, filed February 20, 1996.

Upon full consideration of the motion, response, reply, and the applicable law, the Court has determined that the Defendant's Motion should be **GRANTED**. The Court finds for the reasons set forth herein.

### Background

This case presents the Court with a claim for long-term disability benefits under a plan governed by ERISA. After having her insurance claim denied by Defendant Metropolitan Life Insurance Company, ("MetLife"), Plaintiff Rosemarie Finster ("Finster") filed a lawsuit against the Company on April 3, 1995 in the 95th Judicial District Court of Dallas County, Texas. MetLife removed the case to this court on the basis of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(e) ("ERISA").

Plaintiff was employed by Pearle, Inc. from March 31, 1989 to July 27, 1992 as an administrative assistant. Her company provided long-term disability coverage for its employees through a group insurance plan ("the Plan") provided by MetLife, which was governed by ERISA. Pearle served as the Plan Administrator and MetLife served as the claims fiduciary under the Plan. (Def.'s Ex. B). In January 1993, Plaintiff filed a claim for long-term disability benefits with MetLife based on complaints of back pain.[1] To be entitled to benefits, it was necessary for Plaintiff to establish that she was totally disabled within the meaning of the Plan on

---

1. In December 1987, Plaintiff underwent a three level anterior lumbar fusion with instrumentation in her lumbar spine. (Gill Dep. at 11; Def.'s Ex. C). In May 1990, the instrumentation was removed and she returned to work full time. (Def.'s Ex. A; Finster Dep. at 20–23).

her last day of employment, July 27, 1992;[2] she is not covered for any subsequent disability that arose after that date since she was no longer covered by the Plan. (Def.'s Ex. B).

As a result of MetLife's investigation of Plaintiff's disability status, MetLife determined that she was not totally disabled and denied Plaintiff benefits. The record indicates that although Plaintiff had one office visit with a physician named Dr. Gill on June 16, 1992, she did not see him again until May 19, 1995. (Gill Dep. at 22–24, 42). After this visit, Plaintiff requested that Dr. Gill write her a letter so that she could receive short-term disability benefits. (Finster Dep. at 30–31). To support her claim for long-term disability benefits, Plaintiff then submitted this same letter from Dr. Gill on three subsequent occasions, including December 15, 1992, January 11, 1993 and January 25, 1993. (Def.'s Ex. E). In this letter, Dr. Gill concluded that Plaintiff was totally disabled, although he had not performed a functional capacity evaluation on Plaintiff during the June 16, 1992 exam or anytime thereafter. (Gill Dep. at 26, 42). Several months later, on May 3, 1993, MetLife received a copy of a Notice from the Social Security Administration indicating that it had denied Plaintiff's claim for disability benefits; the Notice also stated that Plaintiff's "overall medical condition may cause some restrictions. However, based on your description of your past job as an administrative assistant, this condition does not prevent you from performing that work." (Def.'s Ex. G).

On May 5, 1993, MetLife wrote a letter to Dr. Gill requesting a detailed narrative explaining his objective findings that precluded Plaintiff from working an eight-hour day, and requested that he indicate the dosage of Plaintiff's medication, complete a Physical Capacities Evaluation Form, and forward copies of all office notes and test results from January 1992 through May 5, 1993. (Def.'s Ex. H). Dr. Gill's office requested a $100.00 payment for the information; MetLife complied and processed a check. (Def.'s Ex. I & J). On July 19, 1993, MetLife received a letter from Dr. Gill stating that Plaintiff was precluded from working a full day at a sedentary job because of "her current position and intolerance for any time greater than 15 minutes as well as the inability for any bending, stooping or lifting." (Def.'s Ex. K). MetLife did not receive the Physical Capacities Evaluation Form or the office notes it had requested. (Carlson Aff. ¶ 14; Gill Dep. at 35–36). On August 23, 1993, MetLife sent a letter to Plaintiff's employer denying her claim for disability benefits on the basis that there was not sufficient objective medical evidence in the file to substantiate that she was totally disabled as defined under the Plan. (Def.'s Ex. L).

On August 28, 1993, Plaintiff asked MetLife to reconsider its decision. (Def.'s Ex. M). In response to this request, MetLife instituted its ERISA administrative review process which included an independent file review by MetLife's Technical Services Division ("TSD"), which was not involved in the original decision to deny benefits. (Carlson Aff. ¶ 16). Although the TSD invited Plaintiff to submit additional evidence for its consideration, Plaintiff sent only another letter from Dr. Gill which did not contain any objective evidence that would support a finding of total disability. (Carlson Aff. ¶ 16; Def.'s Ex. N). Based on this review, MetLife again determined that Plaintiff failed to substantiate her claim for benefits. (Def.'s Ex. O).

Once again, on September 8, 1993, Plaintiff sent a letter to MetLife asking for a reconsideration of its decision; the letter also included information from two new physicians, Drs. Holmes and Jackson. (Def.'s Ex. P). MetLife reviewed the additional medical information, even though neither Doctor could certify whether Plaintiff was disabled as of July 1992, and upheld its prior decision.

---

2. According to the Plan, during the first twenty-four months of benefits eligibility, the claimant must be completely and continuously unable to perform each of the material duties of her regular job, and requires the regular care and attendance of a doctor. After the first twenty-four months of benefit payments, the claimant must be completely and continuously unable to perform the duties of any gainful work or service for which she is reasonably qualified taking into account her training, education, experience and past earnings or the claimant must have suffered a 50% loss of earnings capacity. (Def.'s Ex. B).

(Def.'s Ex. Q). In December 1993, Plaintiff's attorney wrote to MetLife requesting immediate payment of benefits to Finster; attached to this correspondence was another letter from Dr. Holmes. (Def.'s Ex. R). MetLife submitted this information to the TSD for an independent file review (Def.'s Ex. S). The TSD upheld MetLife's decision to deny benefits, given that Dr. Holmes did not examine Plaintiff until May of 1993 and therefore could not testify as to her disability status in July 1992. (Carlson Aff. ¶ 19; Def.'s Ex. S & T; Finster Dep. at 64–65).

Finally, on November 7, 1994, Plaintiff's attorney sent another letter to MetLife, this time enclosing a letter from another physician, Dr. Polatin, who first evaluated Plaintiff on August 24, 1994. (Carlson Aff. ¶ 20; Def.'s Ex. U; Polatin Dep. at 13). Although the ERISA review was concluded on September 15, 1993, MetLife submitted this letter to the TSD for another file review. (Def.'s Ex. V). Later that month, MetLife upheld its decision to deny benefits because Dr. Polatin was not familiar with Plaintiff's physical condition until August 1994 and therefore could not certify that she was totally disabled as of July 1992. (Def.'s Ex. W; Polatin Dep. at 13, 46).

Based upon the information in MetLife's claim file, the Company concluded that Plaintiff failed to submit sufficient objective evidence of her disability even when given numerous opportunities to do so. In the absence of such evidence, MetLife denied Plaintiff's claims for long-term disability benefits.

### Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Thomas v. Harris Cty.*, 784 F.2d

648, 651 (5th Cir.1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the court concludes that there is no evidence upon which a reasonable mind might fairly conclude that the non-movant can prevail at trial, the motion for summary judgment must be granted. *Id.* at 252, 106 S.Ct. at 2512.

The moving party must identify the evidence on file in the case which establishes the absence of any genuine issue of material fact, *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553, and the court must draw all inferences most favorable to the party opposing the motion. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

### Discussion

As an initial matter, the Court must determine the proper standard which governs its review of MetLife's decision to deny benefits under the ERISA Plan. MetLife maintains that in deciding this case, the Court must defer to its factual findings in the absence of an abuse of discretion, while Finster suggests that the review should be *de novo*. In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that when a plan fiduciary interprets the terms of a plan, the proper standard of review is *de novo*[3]. 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Subsequently, in an opinion which specifically interpreted *Bruch*, the Fifth Circuit addressed the proper standard of review when a fiduciary makes a factual determination of an insured's eligibility without engaging in any interpretation of the terms of the plan. *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir.1991), *cert. denied*, 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). The court held that under ERISA plans, regardless of whether the plan expressly grants discretion to the plan administrator, a district court should review factual determinations only for an abuse of discretion. *Id.*

---

**3.** Under the Plan at issue, MetLife acts as the fiduciary in reviewing claims and making decisions as to eligibility of claimants for benefits.

In this case, MetLife did not engage in any contractual interpretation of the Plan; the relevant terms were clear, and MetLife simply made a factual determination, based on the documentation submitted. Therefore, MetLife's determination of whether Plaintiff was totally disabled in July 1992 is a factual determination for which MetLife has an inherent discretion to act, and is reviewed under an abuse of discretion standard. *Id.* at 1558; *Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 598 (5th Cir.1994) (MetLife's determination of whether plaintiff was totally disabled was a factual determination that the court reviewed under abuse of discretion standard).

▇ Thus, Defendant MetLife maintains that summary judgment is appropriate because there is no evidence to suggest that MetLife abused its discretion in finding that Plaintiff was not totally disabled, and in denying long-term disability benefits. Plaintiff does advance several arguments in opposition to summary judgment, she offers no proper authority for her contentions. For example, she insists that "MetLife had a duty, once they were notified that Plaintiff was disabled, to properly investigate this claim" by gathering prior medical records in order to educate itself about Plaintiff's underlying condition. (Resp. at 6–8). Although Plaintiff cites to *Sweatman* for this proposition, the court in *Sweatman* did not hold that a plan administrator has a duty to proactively investigate an insured's claim under an ERISA plan or obtain records in addition to those provided by the insured. 39 F.3d 594. Moreover, the record demonstrates that MetLife did in fact request, on several occasions, additional objective medical evidence, test results, and records (Def.'s Ex. F, H, J, L) and reviewed this new documentation when received. (Def.'s Ex. O, Q, S, V, W).

▇ Plaintiff also suggests that this Court should consider "evidence other than that contained in the administrative record." (Resp. at 9). Fifth Circuit case law, however, directs a district court to evaluate the administrator's fact findings regarding the eligibility of a claimant based only on the evidence before the administrator. *Southern Farm Bureau Life Ins. Co. v. Moore,* 993 F.2d 98, 101–02 (5th Cir.1993); *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 639 (5th Cir.1992). Although Plaintiff urges the Court to consider other "evidence," Plaintiff has not submitted, or even specifically suggested, which additional medical records would support a finding of total disability. Therefore, as long as the determination that Plaintiff was not totally disabled was reasonably based on the facts and documentation in MetLife's possession at the time of its review, the denial of benefits should be upheld. *Pierre,* 932 F.2d at 1563.

▇ Based on the summary judgment record, the Court finds no genuine issue of material fact which would preclude summary judgment. Plaintiff was given numerous opportunities to submit the necessary documentation to establish her disability status as of July 1992. From the record, it appears that MetLife did not receive adequate, objective medical evidence to substantiate Plaintiff's claim for disability benefits. There being nothing in the record to suggest that MetLife abused its discretion by making unreasonable fact determinations, the Court finds that MetLife's Motion for Summary Judgment should be GRANTED.

**So Ordered.**