RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BRANDI GOODWIN,

           *Plaintiff-Appellant*,

    *v.*

UNUM LIFE INSURANCE COMPANY OF AMERICA,

           *Defendant-Appellee*.

No. 24-3321

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:22-cv-03118—Algenon L. Marbley, District Judge.

Decided and Filed: May 15, 2025

Before: THAPAR, NALBANDIAN, and DAVIS, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:** Tony C. Merry, LAW OFFICES OF TONY C. MERRY, LLC, Worthington, Ohio, for Appellant. Brett K. Bacon, Olivia Lin Southam, FRANTZ WARD LLP, Cleveland, Ohio, for Appellee.

───────────────

**OPINION**

───────────────

THAPAR, Circuit Judge. Brandi Goodwin worked as a part-time nursing assistant at a hospital. After she contracted COVID-19, she filed for short-term disability benefits. Unum Life Insurance Company, the administrator of the hospital's employee-benefits plans, approved her claim. But the short-term disability benefits soon ran out.

When it came time to decide whether Goodwin would receive long-term disability benefits, Unum denied her claim. The district court upheld Unum's denial. Because Unum's decision was neither procedurally nor substantively unreasonable, we affirm.

I.

As a part-time nursing assistant at Fisher Titus Hospital, Goodwin shouldered various patient care responsibilities. In caring for patients, she had to stand and walk for eight to twelve hours a day and regularly engage in physical labor like lifting sizable amounts of weight, bending, and squatting. Goodwin's role also required soft skills like fostering an environment where the dignity and privacy of all patients were respected.

In December 2020, just a few months after she started working for Fisher Titus, Goodwin contracted COVID-19. She reported experiencing shortness of breath and chest pain. Returning to work as a point-of-care technician was a daunting prospect.

Luckily for Goodwin, she had coverage under disability insurance policies issued by Unum Life Insurance Company. One of those policies covered short-term disabilities. Under that policy, an individual is "disabled," and thus entitled to short-term disability benefits, if she cannot perform her core occupational duties due to her sickness or injury and loses 20% or more of her weekly earnings as a result. Those benefits can last up to twenty-four weeks.

Goodwin filed a claim for short-term disability benefits soon after she stopped working. Unum approved her short-term disability claim multiple times: it granted and then extended coverage up until the policy's twenty-four-week maximum—from January 2021 to June 2021. In granting Goodwin short-term disability benefits, at no point did Unum independently consult with any physicians.

Throughout 2021, Goodwin's medical issues persisted. As documented by her primary care physician Dr. Seth Ruggles, Goodwin's shortness of breath continued, now accompanied by fatigue and vertigo. Dr. Ruggles referred Goodwin to Dr. Neil Cherian, a neurologist, who later noted that Goodwin was experiencing lightheadedness, elevated heart rate, chest pain, and shortness of breath.

But Goodwin's short-term disability benefits ran out in June 2021, when she reached the twenty-four-week cap. Thus, to continue collecting benefits, Goodwin would need to qualify for long-term disability benefits. Under the terms of the long-term disability benefits plan, a claimant like Goodwin is "disabled," and thus entitled to benefits, if she remains unable to substantially perform her work duties and has lost 20% or more of her monthly earnings as a result.

In June, Unum assessed whether Goodwin could collect long-term disability benefits. This time, Unum denied her claim. Why? Unum gave two reasons. First, it said that Goodwin's vertigo was a pre-existing condition. Because the policy's terms excluded pre-existing conditions, the vertigo diagnosis didn't warrant coverage.

Second, Unum concluded that Goodwin's test results didn't support her continued complaints about shortness of breath. Unum pointed to normal pulmonary function test results and a normal chest X-ray from January 2021. Unum also observed that Nurse Practitioner Heidi Gast had encouraged Goodwin to return to work and to start exercising. She did so during two different visits in February 2021 and March 2021. Unum added that despite her repeated claims of shortness of breath, Goodwin consistently showed a normal pulse rate and no shortness of breath during examinations. And Goodwin's physical therapy records indicated that, by June, she was walking daily, jogging every other day, and could complete a thirty-minute weight training workout without issue.

Unum acknowledged the opinion of Goodwin's neurologist, Dr. Cherian, that Goodwin couldn't return to work. But it pointed to contrary opinions from its own medical reviewers: Nurse Kellie Jones, Dr. James Bress, and Dr. Joseph Palermo. Based on reviews of Goodwin's file, each medical reviewer concluded that Goodwin's chest pain, shortness of breath, and related complaints were not borne out by the medical testing. Further, those reviewers determined that Goodwin wasn't disabled as of her February 23, 2021, office visit with Nurse Practitioner Gast during which Goodwin demonstrated normal blood oxygen saturation and exhibited no signs of distress. All testing and imaging remained normal after that visit.

In response, Goodwin timely filed an administrative appeal with Unum. By that time, Unum was already reconsidering its previous denial in light of Goodwin's new evidence. Specifically, Unum was grappling with Goodwin's recent Postural Orthostatic Tachycardia Syndrome (POTS) diagnosis, which she had received after tests at the Cleveland Clinic. In addition, Unum was assessing Goodwin's new cardiovascular testing results and notes from a neurology consultation.

Unum forwarded this evidence to its file reviewers—Jones, Bress, and Palermo. The new evidence changed none of their conclusions. At the close of the reconsideration process, Unum stood by its decision to deny Goodwin long-term disability benefits. It acknowledged Goodwin's POTS diagnosis and her complaints of headaches, shortness of breath, and chest pain, among other ailments, but added that Goodwin's December 2021 physical exam was normal and revealed improvement. In short, the reconsideration process didn't alter Unum's denial decision.

Unum then assessed Goodwin's administrative appeal in earnest. In doing so, it forwarded the clinical record to an outside consultant, Dr. Steven Winkel. Dr. Winkel concluded that Goodwin hadn't been disabled since February 23, 2021. Unum denied Goodwin's appeal; it relied heavily on Dr. Winkel's conclusions.

## II.

After her administrative appeal came up short, Goodwin sued Unum in federal district court and argued that Unum wrongly denied her long-term disability benefits. How was Goodwin able to bring her dispute with Unum into federal court? Her benefits plan was governed by the Employee Retirement Income Security Act, commonly called ERISA.

ERISA is a federal statute that regulates employee retirement and health plans. ERISA gives covered employees a federal cause of action to protect their rights created by disability benefits plans. Specifically, ERISA provides that a plan participant like Goodwin may file a "civil action" in federal court to enforce her rights under her plan. 29 U.S.C. § 1132(a)(1).

Before the district court, Goodwin moved for "judgment on the administrative record."**1** So did Unum.  The district court granted Unum's motion and upheld the benefits denial. Goodwin appealed.

### III.

We review the district court's judgment on the administrative record de novo.  *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).  In doing so, we review the plan administrator's (Unum's) underlying decision de novo, unless the plan delegates discretion to Unum to make benefits determinations.  *Autran v. Procter & Gamble Health & Long-Term Disability Benefit Plan*, 27 F.4th 405, 411 (6th Cir. 2022).  If the plan delegates discretion, we review the administrator's benefits decision under a unique form of "arbitrary-and-capricious" review.  *Id.*  The parties agree that the plan delegated discretion to Unum.

When a benefits plan delegates discretion to the administrator, Supreme Court precedent instructs us to filter our deferential review through an abuse of discretion standard, not arbitrariness review.  Indeed, we normally apply arbitrariness review to federal agency action. Thus, it's odd to assess the decision of a private benefits plan administrator—whom ERISA designates as a "fiduciary," 29 U.S.C. § 1002(21)(A)—under the banner of arbitrariness review. ERISA's regulation of these fiduciaries sounds in trust law, not administrative law.  That's why the Supreme Court has pointed us to the law of trusts when discussing the appropriate standard of review in cases like this one.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008).  The law of trusts, in turn, supplies an abuse of discretion standard.  *Glenn*, 554 U.S. at 115.  An abuse of discretion standard thus seems more appropriate here than arbitrariness review.  And, at least in theory, that

---

**1**One searches the Federal Rules of Civil Procedure in vain for "motions for judgment on the administrative record."  Pursuant to the Rules, litigants can move for things like dismissal, summary judgment, and judgment as a matter of law.  *See* Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 56(a); Fed. R. Civ. P. 50(a).  They cannot move for "judgment on the administrative record."  And one would think that the Rules apply to ERISA cases like this one. ERISA authorizes plan participants to bring "civil action[s]" in federal court to challenge adverse benefits determinations.  29 U.S.C. § 1132(a).  The Federal Rules of Civil Procedure normally govern "all civil actions." *Tranbarger v. Lincoln Life & Annuity Co. of N.Y.*, 68 F.4th 311, 320 (6th Cir. 2023) (Nalbandian, J., concurring). Despite ERISA's text and the normal mechanics of civil suits in federal court, we seem to have constructed an atextual procedural regime for ERISA cases.  We have confined the federal suit to the "administrative record," and we have assessed things called "motions for judgment on the administrative record."  But no arguments about these practices are before us today.

distinction could matter. As Judge Wilkinson has put it, "the abuse of discretion standard is less deferential to administrators than an arbitrary and capricious standard would be; to be unreasonable is not so extreme as to be irrational." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008).

Even still, the way in which we have applied "arbitrariness review" in ERISA cases when the benefits plan delegates discretion is faithful to Supreme Court precedent. Why? Just like with abuse of discretion review, we zero in on reasonableness. One of the touchstones of an abuse of discretion inquiry is reasonableness. *Glenn*, 554 U.S. at 131 (Scalia, J., dissenting) (citing Restatement (Second) of Trusts § 187 (Am. L. Inst. 1957)). And our precedent in this area has been geared towards the reasonableness of plan administrators' decisions. *See, e.g.*, *Price v. Bd. of Trs. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011). Indeed, we have sometimes toggled between the "arbitrariness" formulation and the "abuse of discretion" formulation in the span of a single paragraph—which provides further evidence that our circuit's ERISA arbitrariness review doesn't buck the Supreme Court's abuse of discretion framework. *See, e.g.*, *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009).[2] Still, because labels affect thought, it's best to follow the Supreme Court's lead and call our standard of review what it is: abuse of discretion.

When applying circuit precedent to Goodwin's claim that Unum wrongly denied her long-term disability benefits, we assess the reasonableness of Unum's final decision on two registers: procedural and substantive. *Autran*, 27 F.4th at 411.[3]

---

[2]In their helpful supplemental briefing, both parties agree that our circuit's arbitrary and capricious review in the ERISA context is functionally equivalent to the abuse of discretion review that the Supreme Court referred to in *Firestone* and relied upon in *Glenn*.

[3]Unum has expressly declined to rely on its pre-existing condition rationale here on appeal. *See* Appellee Br. at 19 n.12. So, we assess only whether Unum's disability determination was procedurally and substantively reasonable. Because we agree with the district court that it was, it follows that the district court did not err in not reaching Goodwin's life insurance premium claim. As both parties agreed below, the life insurance premium claim fails if the disability claim fails.

A.

For the plan administrator's decision to be procedurally sound, the administrator must have engaged "in reasoned decisionmaking." *Id.* at 412.  As relevant to this appeal, we look to whether: (1) the administrator considered all relevant evidence; (2) the administrator adequately explained any change from an earlier benefits ruling; (3) the administrator prized the opinions of file reviewers over those who assessed the patient in-person; and (4) the administrator suffered from a conflict of interest.  *Id.*  No one of these "factors is dispositive in its own right."  *Id.*  We "weigh them all" when assessing the reasonableness of the administrator's decision-making process.  *Id.*

These four considerations are particularly important here because Goodwin makes arguments under each factor.  She argues that: (1) Unum cherry-picked evidence and didn't consider all the evidence cutting in favor of a long-term disability finding; (2) Unum failed to explain its shift from "yes" on short-term benefits to "no" on long-term benefits; (3) Unum disregarded the opinions of Goodwin's treating physicians in favor of the opinions of Unum's own file reviewers; and (4) Unum had a conflict of interest that infected its benefits determination.  We address each argument in turn.

1.

First, Goodwin argues that Unum overlooked reams of evidence in denying her long-term disability benefits.  Goodwin points to her POTS diagnosis, vertigo, and cardiac stress test results, among other pieces of evidence.

But Unum and its file reviewers did engage with that evidence.  They noted the reports of Goodwin's irregular heart rates, exercise stress test results, POTS diagnosis, shortness of breath issues, and cognitive impairment.

Goodwin also contends that Unum overlooked her vertigo diagnosis.  After all, in its initial denial, Unum had reasoned that Goodwin's vertigo was a pre-existing condition that couldn't establish disability coverage.  But in his file review during the administrative appeal process, Dr. Winkel acknowledged Goodwin's vertigo history.  Nonetheless, he noted

Goodwin's ability to lift weights without any dizziness and that her evaluations revealed no balance issues. Unum, in turn, relied on Dr. Winkel's analysis when sticking to its denial decision. And Unum expressly noted Goodwin's lack of dizziness.

Because Unum did not cherry-pick or disregard evidence, this factor doesn't cut against Unum.

2.

Second, Goodwin contends that Unum failed to explain why its "yes" to short-term benefits became a "no" to long-term benefits. Indeed, Unum had approved short-term disability benefits for Goodwin through June 2021. Yet, when it came time for its file reviewers to assess Goodwin's long-term disability claim, they all concluded that Goodwin wasn't disabled as of February 2021. If that were the case, why was Unum distributing disability benefits to Goodwin from February 2021 to June 2021?

Under *Autran*, the administrator must "identify a 'rational' reason" for changing its benefits answer from "yes" to "no." *See* 27 F.4th at 414; *see also Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978, 984 (6th Cir. 2010) (only requiring that administrator "have a *reason* for the change"). This "rational reason" requirement sets forth a "low bar." *Autran*, 27 F.4th at 414. New evidence can provide such a reason. *Id.*

Here, new evidence—from treating physicians, new tests, and new file reviews—justified Unum's change. Consider, for example, Dr. Winkel's analysis during the long-term disability claim's administrative appeal stage. Dr. Winkel pointed to new evidence from June through the fall of 2021 that included Goodwin's continued exercise, decreased dizziness, and normal cardiac, pulmonary, and neurological exams.

In response, Goodwin argues that there is no new evidence "in the long-term record for the time period between" December 2019 and June 2021 "that was not in the short-term record for the same period." Reply Br. at 7. In other words, there were many months post-February 2021 in which Unum deemed Goodwin disabled for short-term benefits purposes. And now

Unum claims Goodwin was not disabled during those same months for long-term benefits purposes.

Why the disconnect? Even if no new raw medical data was generated with respect to those months, Unum's short-term disability determinations didn't involve "any physician consultant reports related to reviews of her clinical record." Appellee Br. at 34. Unum's long-term disability review process very much did. Recall how that process entailed consulting with Doctors Bress, Palermo, and Winkel—all of whom assessed the relevant records and reasoned that Goodwin could work as a nursing assistant. Unum did not need to shield its eyes from these new professional opinions; it was not locked into its prior assessments of Goodwin's early 2021 disability status. And it would be illogical to require Unum to grant long-term benefits simply because it had granted short-term disability benefits: "This would vitiate the distinction between the two, and, perhaps, make plan administrators less likely to grant short-term benefits (or, at minimum, make that process take more time)." *Holden v. Unum Life Ins. Co. of Am.*, No. 20-6318, 2021 WL 2836624, at *17 (6th Cir. July 8, 2021).

In sum, even though Unum didn't expressly note that it was changing its disability determination, the emergence of new evidence—which Unum relied upon—means this factor does not cut against Unum. "Unum [was] not required to come to the same conclusion" regarding long-term benefits as it did regarding short-term benefits. *Id.* It could and did change course.

3.

Third, we assess whether Unum valued the opinions of its own file reviewers over the opinions of Goodwin's treating medical professionals. It's true that Unum's file reviewers didn't evaluate Goodwin in person and that certain treating physicians like Dr. Ruggles and Dr. Cherian advised that Goodwin was unable to return to work. But Nurse Practitioner Gast—who evaluated Goodwin in person after a referral from Dr. Ruggles—advised Goodwin to return to work. Therefore, Goodwin's treating medical professionals weren't uniformly of the opinion that she could not return to work. So, this factor doesn't cut against Unum.

At any rate, we "may not conclude that the opinion of treating physicians is entitled to more weight than that of non-treating physicians." *Bruton v. Am. United Life Ins. Corp.*, 798 F. App'x 894, 904 (6th Cir. 2020). "Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another . . . the plan administrator's decision cannot be said to have been arbitrary and capricious." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003); *cf. Smith v. Reliance Standard Life Ins. Co.*, 778 F. App'x 207, 211 (4th Cir. 2019) (applying abuse of discretion framework and noting how plan administrators need not give treating physicians' opinions controlling weight). Nor does such a choice increase the administrator's burden of explanation for its decision. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). In short, the fact that Unum found the opinions of Doctors Bress, Palermo, and Winkel more persuasive than the opinions of Doctors Ruggles and Cherian didn't make its denial decision unreasonable.

4.

Fourth, we assess whether Unum's inherent bias in favor of finding no disability (and thus not paying out any benefits) colored its decision. *Autran*, 27 F.4th at 418.

There is no doubt that Unum is a conflicted fiduciary. "A third-party insurance company that administers an ERISA-governed disability plan and that pays for benefits out of its own coffers profits with each benefits claim it rejects." *Glenn*, 554 U.S. at 127 (Scalia, J., dissenting). That's a quintessential conflict of interest that we must consider in assessing the reasonableness of Unum's decision. *Id.* at 115–19 (majority opinion).

But such conflicts are common. *Autran*, 27 F.4th at 418. So "conclusory allegations of bias" based on this run-of-the-mill conflict "do not deserve much weight" in our analysis. *Id.* (citation omitted). For the conflict to be particularly probative, Goodwin must provide "concrete evidence" that the conflict materially affected Unum's decision. *Id.*

Goodwin points to no such record evidence. Therefore, though relevant, Unum's conflict doesn't weigh heavily in our analysis. It cannot overcome the other markers of procedural reasonableness canvassed above.

\*     \*     \*

Unum's decision to deny Goodwin long-term disability benefits was procedurally reasonable.

## B.

On the substantive side of the ledger, we ask whether Unum's decision is "supported by substantial evidence in the administrative record." *Id.* at 412. Unum satisfies this standard provided that "a rational person could conclude that the evidence was adequate to justify the decision" to deny Goodwin long-term benefits. *Id.* (citation omitted). If there's evidence "that could support a rational decision in either direction," Unum's choice to go one way rather than another is substantively reasonable. *Id.*

Substantial evidence in the administrative record supports Unum's decision to deny Goodwin long-term disability benefits. The numerous treatment records cited by Goodwin's file reviewers documenting her exercise, normal test results, and normal performance on physical examinations are the most obvious examples. The professional opinions of Goodwin's file reviewers bolster this finding. *See id.* at 413 (noting a file reviewer's opinion as part of a substantial evidence analysis); *Eberle v. Am. Elec. Power Sys. Long-Term Disability Plan*, No. 21-4224, 2022 WL 5434559, at \*2 (6th Cir. Oct. 7, 2022) (same). So Unum's decision to deny Goodwin's long-term disability claim was substantively reasonable.

\*     \*     \*

We affirm.